UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN CIVIL LIBERTIES
UNION FUND OF MICHIGAN,

      Civil Action No. 14-11213

   Plaintiff,

      Honorable Denise Page Hood

v.

LIVINGSTON COUNTY, BOB
BEZOTTE and TOM CREMONTE,

   Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [#11]

On March 24, 2014, Plaintiff American Civil Liberties Union Fund of Michigan ("ACLU") filed the instant action against Defendants Livingston County, Bob Bezotte and Tom Cremonte challenging the constitutionality of Livingston County Jail's post-card only mail policy. The case was reassigned to the undersigned as a companion case to *Prison Legal News v. Livingston County Sheriff Bob Bezotte,* Case No. 11-13460 ("Prison Legal"). The ACLU alleges three counts pursuant to 42 U.S.C. § 1983: Violation of First Amendment (Blocking Mail) (Count One); Violation of First Amendment (Reading and Publishing Mail) (Count Two); and Violation of Fourteenth Amendment (Due Process) (Count Three).

1

On April 11, 2014, this Court entered an Order Granting Plaintiff's Motion for Temporary Restraining Order. [Docket No. 11. Filed April 9, 2014] On April 25, 2014, the Court entered an Order extending the TRO through May 13, 2014. [Docket No. 24] Now before the Court is Plaintiff's Motion for Preliminary Injunction [Docket No. 11, filed April 9. 2014] to which Defendants filed a Response [Docket No. 24, filed April 25, 2014] and Plaintiff filed a Reply [Docket No. 29, filed May 2, 2014].

I.  BACKGROUND

According to Plaintiff, the ACLU is a not-for-profit 501(c)(3) organization dedicated to protecting the individual rights and liberties that the Constitution guarantees to everyone in this country. [Compl. ¶ 8]  The ACLU alleges that the Livingston County Jail severely restricts inmate communication with the outside world through a "postcard only" mail policy, which limits all incoming and outgoing mail to one side of a 4 by 6-inch postcard.  [Compl. ¶ 2]  The policy excepts legal mail, but the ACLU claims Defendants do not allow ACLU attorneys to write letters to inmates regarding the constitutionality of their conditions of confinement, including letters that would address the constitutionality of the postcard-only policy itself. [Compl. ¶ 2] Defendants failed to notify either the ACLU or the inmates to whom the legal mail is addressed that the mail was not being delivered to its intended recipients

and opened, read, and shared the legal mail sent by an ACLU attorney to an inmate who is no longer held at the jail. [Compl. ¶ 4]

Livingston County Jail is one of a growing number of jails in Michigan and other states to have implemented a controversial "postcard only" policy for inmate mail. [Compl. ¶ 12] The United States Supreme Court has specifically recognized that for the ACLU, litigation is not a technique resolving private differences, but is instead a form of political expression and political associated protected by the First Amendment. [Compl. ¶ 18] The ACLU has long been dedicated to protecting the constitutional rights of prisoners. [Compl. ¶ 19] In addition to numerous cases the ACLU has pursued which involve inmates, ACLU attorneys have previously represented Livingston Count Jail inmates in challenging the unconstitutional conditions of their confinement. [Compl. ¶ 22] Recognizing that ending Defendants' postcard-only policy may require inmates themselves to take legal action, the ACLU decided to reach out to inmates who are currently detained by Defendants. [Compl. ¶ 27]

The ACLU claims that on February 19, 2014, an ACLU attorney mailed 25 letters in envelopes addressed to individually named inmates at the Livingston County Jail. [Compl. ¶ 28] The envelopes were clearly marked "legal mail," and the attorney's name and Michigan bar number were on the envelope, along with the

3

ACLU's logo and address. [Compl. ¶ 28] The ACLU attorney's letters expressed concern that the postcard-only policy is unconstitutional and offered to meet with the inmate, upon request, to provide legal advice or assistance regarding that issue. [Compl. ¶ 30] The letters provided the inmate with a form to fill out and return to the ACLU if the inmate wished to request a meeting with an ACLU attorney. [Compl. ¶ 30] The ACLU letters described above were received by Defendants at the jail on or about February 21, 2014. [Compl. ¶ 31]

The ACLU contends that it has not received any responses to its letters. [Compl. ¶ 32] At some point, the ACLU became aware of deposition testimony by Defendant Cremonte in *Prison Legal* [11-13460]. In his deposition, Cremonte testified that the Defendants do not deliver legal mail sent by an attorney to an inmate unless the mail is sent by the inmate's "attorney of record" in an ongoing court case. [Compl. ¶¶ 34-35] Cremonte further testified that the Defendants do not deliver legal mail when an attorney from outside of the county writes to four or five inmates and Defendants do not deliver legal mail sent by an attorney to an inmate if jail officials conclude that the letter is a "mass mailing." [Compl. ¶ 34] Plaintiff believes that its letters were not delivered to the specific inmates and, further, that the letters remain in the Defendants' custody. [Compl. ¶¶ 35-36] Plaintiff asserts that it has not been notified that the letters addressed to specific inmates were not delivered, in violation of its

4

constitutional rights. [Compl. ¶ 37] Plaintiff believes that the Defendants opened a letter addressed to an inmate no longer in their custody, read the contents of the letter, sent a scanned copy of the letter via email to attorneys who represent Defendants in the *Prison Legal* case, and Defendants' attorneys filed the letter as a public court document via PACER. [Compl. ¶ 42] This letter and accompanying email are the subject of Defendants' Motion to Strike. [Docket No. 18]

In response, Defendants argue that this Court should deny Plaintiff's Motion for a Preliminary Injunction because Plaintiff is unlikely to succeed on the merits of its First Amendment constitutional claim because the "protections accorded legal mail do not extend to Plaintiff's letters." [Docket No. 24, Pg ID 310] Further, Defendants contend that the jail's practice concerning incoming mail designated as legal mail is "rationally related to legitimate penological interests." [Id.]

II.  ANALYSIS

    A.  Standard

The ACLU seeks an order requiring Defendants to continue to deliver the ACLU's letters as they are received at the jail, which the ACLU claims to have sent to certain inmates. If a particular inmate is no longer in Defendants' custody, the ACLU requests that the Defendants return the letter to the ACLU with a suitable explanation for why it is being returned. The ACLU also seeks an Order from this

5

Court to enjoin Defendants' policy and practice of refusing to promptly deliver properly marked legal mail sent by an attorney and individually addressed to an inmate, prevent Defendants from failing to take reasonable steps to provide individualized notice and an opportunity to be heard to the intended recipient and to the sender of any mail that is individually addressed to an inmate but not promptly delivered to the inmate, and enjoin Defendants from reading, sharing or publishing the content of legal mail sent by the ACLU addressed to an inmate without a search warrant or probable cause.

"The court may issue a preliminary injunction only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). Four factors must be balanced and considered before the Court may issue a preliminary injunction under Rule 65(a): 1) the likelihood of the plaintiff's success on the merits; 2) whether plaintiff will suffer irreparable injury without the injunction; 3) the harm to others which will occur if the injunction is granted; and 4) whether the injunction would serve the public interest. *In re Delorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985); *In re Eagle-Pitcher Industries, Inc.*, 963 F.2d 855, 858 (6th Cir. 1992); and *N.A.A.C.P. v. City of Mansfield, Ohio*, 866 F.2d 162, 166 (6th Cir. 1989). The first factor is the most critical inquiry of the four criteria. *Mason County Med. Ass'n v. Knebel,* 563 F.22d 256, 261 (6th Cir. 1977). In making its determination the "district court is required to make specific findings

concerning each of the four factors, unless fewer factors are dispositive of the issue." *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.,* 119 F.3d 393, 399 (6th Cir. 1997).

The Court is satisfied that"[t]he right of access to counsel is not limited to those already represented by an attorney of record, but extends equally to prisoners seeking any form of legal advice or assistance." *Ruiz v. Estelle*, 503 F. Supp. 2d 1265, 1372 (S.D. Tex. 1980) (citing *Nolan v. Scafati*, 430 F.2d 548 (1st Cir. 1970)). The court is further satisfied that "the right to obtain legal advice does not depend on the purpose for which the advice is sought" and that "the First Amendment protects the right of an individual or group to consult with an attorney on any legal matter." *Denius v. Dunlap*, 209 F.3d 944, 954 (7th Cir. 2000). Here, the Court notes the contention between the parties regarding whether the mail that the ACLU sent to the identified prisoners constituted "legal mail" for purposes of heightened constitutional protection or was merely "bulk mail" which is analyzed on a less strict standard.[1] The Court

---

[1] The Court notes that Defendants contend that the letters sent by Plaintiff to inmates at the Livingston County Jail do not constitute "legal mail" and should be analyzed under the less stringent *Turner v. Safley*, 482 U.S. 78 (1987), standard. Defendants define privileged "legal mail" as mail that is sent by an attorney that "represents the inmate in a legal matter in which the inmate is involved." **[Docket No. 24, Pg ID 307; Ex. 1- Transcript of Defendant Cremonte's Deposition, Pgs 29, 101-103]**In *Turner*, the Supreme Court formulated a standard of review for challenges to jail regulations that infringe on the constitutional rights of inmates. *Turner*, 482 U.S. at 89 (stating that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."). Because the Court deems the mail to be "legal mail," the Court

determines that the mail the ACLU sent was "legal mail."

B.  Legal Mail Analysis

"The determination of whether particular kinds of correspondence qualify for the constitutional protection accorded a prisoner's 'legal mail' is a question of law properly decided by [the] court." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003) (citing *Seal v. Morgan*, 229 F.3d 567, 580 (6th Cir. 2000)(stating that courts determine questions of law, juries determine questions of fact)).  A prisoner's right to receive mail is protected by the First Amendment, but prison officials may impose restrictions that are "reasonably related to security or other legitimate penological objectives." *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992)).

It has been previously established that "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security." *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993). However, the opening and reading of incoming mail in an "arbitrary and capricious fashion violate[s] a prisoner's First Amendment rights." *Sallier*, 343 F.3d at 874 (citing *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986)).  The Court appreciates Defendants' contention that mail is not "legal mail" because it is sent by an attorney. As the Sixth Circuit Court of appeals noted in *Sallier*, "[n]ot all mail that a prisoner

---

determines an analysis under *Turner* is not appropriate.

receives from a legal source will implicate constitutionally protected legal mail rights." *Sallier*, 343 F.3d at 874. The *Sallier* Court went on to say that "even mail from a legal source may have little or nothing to do with protecting a prisoner's access to the courts and other governmental entities to redress grievances or with protecting an inmate's relationship with an attorney" but, when it does, the Court is directed to "balance the interest of prison security against the possibility of tampering that could unjustifiably chill the prisoner's right of access to the courts or impair the right to be represented by counsel." *Id.*

When incoming mail is determined to be "legal mail," there is a "heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Id.* (citing *Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) ("The right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts . . ."); *see also Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater

9

protection to legal mail than to non-legal mail . . . .").

      i.      Likelihood of Success on the Merits

The Court first addresses Plaintiff's likelihood of success on the merits of its "legal mail" claim. Correspondence from an attorney is the very essence of "legal mail." *Kensu*, 87 F.3d at 174. A prisoner may not be required to designate ahead of time the name of the attorney who will be sending him confidential legal mail. *Knop*, 977 F.2d at 1012. A prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process and mail from an attorney implicates a prisoner's protected legal mail rights. *Kensu*, 83 F.3d at 174. There is no penological interest or security concern that justifies opening such legal mail outside the prisoner's presence. *Sallier*, 343 F.3d at 877. The Sixth Circuit has, in distinguishing mail sent by the "ACLU, courts, defense attorneys" from mail that is sent by "Prosecuting Attorneys and the Attorney General," noted that mail from the ACLU is not mail that "almost always consist[s] of documents in the public record." *Id.* at 877; *Boswell v. Mayer*, 169 F.3d 384, 389 (6th Cir. 1999).[2] The contents of this

---

[2] The Court notes Defendants' argument that *Boswell* is distinguishable because in "the absence of a policy that defines legal mail to encompass mail from the ACLU, courts have held that mail from the ACLU is not legal mail unless the contents fall within the 'parameters of the attorney/client privilege.'" The Court's determination is, as stated in this order, that the mail sent by the ACLU in this case is "legal mail" and, for that reason, should be treated as such pursuant to the already existing Livingston County Jail "legal mail" policy.

type of mail can be deemed "confidential communication with an attorney." *Sallier*, 343 F.3d at 877.

In the instant case, Plaintiff contends that it sent letters in envelopes individually addressed to individual inmates and that the letters were clearly labeled "legal mail" and "identified the sender as an attorney from the ACLU." [Docket No. 11, Pg ID 142] Defendant does not deny that the letters were labeled "legal mail," instead stating that following entry of an order in a related case, *Prison Legal News v. Livingston County Jail, et al.*, 11-13460, "Plaintiff mailed twenty-five letters enclosed in envelopes—all of which bore a 'legal mail' designation—to inmates in Defendants' custody." [Docket No. 24, Pg ID 305] Defendants argue that the letters—despite the labeling and identification of an attorney as the sender—were not "legal mail." Additionally, Defendants claim that the label "legal mail" does not, on its own, identify mail as "legal mail" because criminals "could bypass the inspection to which regular mail is subjected by inscribing fictitious names, titles or professional designations, law firms or legal organizations, and return addresses on envelopes." [Docket No. 24, Pg ID 329]

The return address label on these envelopes included "an attorney's name and Michigan bar number . . . above the ACLU's logo and address." [Docket No. 24, Pg ID 128] The letters in question stated the following:

11

> The American Civil Liberties Union of Michigan (ACLU) is investigating the Livingston County Jail's troubling "postcard only" policy for inmate mail, which we believe to be unconstitutional.
>
> In order to learn more about this policy and its effects on inmates and their families, we wish to meet with individuals who may be interested in challenging this policy in court. The purpose of this letter is to find out if you are interested in meeting with an ACLU attorney, or someone who works under the supervision of an ACLU attorney, for the purpose of obtaining legal advice or assistance regarding the Livingston County Jail's postcard-only mail policy. If you are, please fill out the enclosed form and return it to me in the enclosed envelope as soon as possible.
>
> Unfortunately, it is extremely unlikely that we will be able to help you with any other legal issues you may have. Furthermore, it may turn out that we are ultimately unable to represent you in this matter. By filling out the form below, you would be requesting a meeting with an ACLU attorney in order to seek legal advice or discuss the possibility of legal representation.

[Docket No. 1, Ex. F]

Defendants claim that these letters did not constitute "legal mail" because they were not "confidential communications pertaining to pending litigation." *Marr v. James*, No. 07-1201, 2010 WL 1997126, *1 (W.D. Mich. May 19, 2010) (citing *Bell-Bey v. Williams*, 87 F.3d 832, 839 (6th Cir. 1996)). Defendants also cite to cases in other courts that have held similarly. *See Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005) (noting that correspondence did not qualify as legal mail because

plaintiff "was neither represented nor seeking to be represented by an attorney from any of the organizations with which he exchanged correspondence"); *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981) (legal mail only includes "mail to or from an inmate's attorney," the contents of which "come within the parameters of the attorney/client mail privilege"); *Daniel v. Blanas*, 52 Fed. Appx. 394, 394 (9th Cir. 2002) (citing *Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996), *amended by*, 135 F.3d 1318 (9th Cir. 1998)) (legal mail only includes "mail from a prisoner's lawyer"); *Jenkins v. Huntley*, 235 Fed. Appx. 374, 376 (7th Cir. 2007) (the "mere fact that a letter comes from a legal organization does not require prison officials to treat it as privileged, particularly when the inmate is neither represented nor seeking to be represented by one of the organization's attorneys" and the letter "contain[s] no privileged information").

Determinative to the Court, however, solely on the information before it and the specific facts of this case, is the fact that the envelopes were labeled "legal mail," clearly delineated that the mail came from an ACLU attorney, and asked if the inmate was "interested in meeting with an ACLU attorney, or someone who works under the supervision of an ACLU attorney, *for the purpose of obtaining legal advice or assistance* regarding the Livingston County Jail's postcard-only mail policy." [Docket No. 1, Ex. F] That the letter went on to say that " it may turn out that [the

13

ACLU is] ultimately unable to represent" the inmate does not take away from the ACLU's offer of representation to an inmate who should have the right to seek legal advice or discuss the possibility of legal representation. *See Jensen v. Klecker*, 648 F.2d 1179, 1183 (8th Cir. 1981) (finding that a letter from the National Prison Project, bearing the name of an attorney and stamped "Lawyer Client Mail Do Not Open Except In Presence of Prisoner" fell within the definition of protected attorney-client legal mail). These letters did not simply give legal information or even provide legal advice but offered inmates the opportunity to speak with attorneys on a legal issue that the inmates could decide affected them or not.

Determining that the mail in question sufficiently satisfies the "legal mail" standards on these facts, the Court is satisfied that Plaintiff has a likelihood of success on the merits. Where "a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on the merits often will be the determinative factor." *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). The Court is satisfied that Plaintiff has shown likelihood of success on its claim that the Livingston County Jail's postcard-only policy is in violation of the constitution inasmuch as legal mail sent from the ACLU was not delivered, the jail opened the letters and read the contents, and the jail failed to notify (based on its own admissions) the inmates or the ACLU that the mail was not

14

being delivered. Plaintiff has met its burden that it will succeed on the merits of its constitutional claims as to the non-delivery of its "legal mail."

      ii.      Irreparable Injury

The Court notes that it is well settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976); *Newsome v. Norris,* 888 F.3d 371, 378 (6th Cir. 1989). Reviewing the Complaint, the Court determines that the ACLU has been and will continue to be irreparably harmed by Defendants' failure to deliver "legal mail" that is sent by ACLU attorneys to specifically named inmates. The Court also determines that irreparable injury will occur if Defendants publish any of these letters to the public.

      iii.      Balance of Harm to Others and Public Interest

The Court here addresses the balancing of harms that can potentially be the result of this Court granting Plaintiff's motion and entering a preliminary injunction. The Sixth Circuit has noted that "the purpose of the [balance of harms] test is . . . to underscore the flexibility which traditionally has characterized the law of equity. It permits the district court, in its discretion, to grant a preliminary injunction even where the plaintiff fails to show a strong or substantial probability of ultimate success on the merits of his claim, but where [it] at least shows serious questions going to the

merits and irreparable harm which decidedly outweighs any potential harm to the defendant if the injunction is issued." *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 104 (6th Cir. 1982). In evaluating this factor, the Court may also consider harm to defendants. *Ramik v. Darling Int'l, Inc.*, 161 F.Supp.2d 772, 778 (E.D. Mich. 2001) (citation omitted). The Court appreciates the Defendants' arguments based on financial difficulty, but the Court is satisfied that any claim of harm by Defendants is made less compelling by the fact that Defendants's actions are infringing the constitutional rights of the inmates within their control.

As to the public interest, the Court notes that "it is always in the public interest to prevent the violation of a party's constitutional rights." *Connection Distrib. Co.*, 154 F.3d at 288. While it is true that "the determination of where public interest lies . . . is dependent on a determination of the likelihood of success on the merits of the First Amendment challenge," *id.*, because it has been determined that Plaintiff has a likelihood of success on the merits of its claim that the postcard-only policy as it pertains to "legal mail" sent by the ACLU violated the inmates' constitutional rights, the public interest will not be harmed by the entering of a preliminary injunction enjoining Defendants from failing to deliver this mail. "[T]the public as a whole has a significant interest in ensuring equal protection of the laws and protection of First Amendment liberties." *Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70

F.3d 1474, 1490 (6th Cir. 1995).

Because Plaintiff has shown a likelihood of success on the merits of its claim, Plaintiff has shown that it will suffer irreparable injury if the Court does not grant its motion, and the balance of harms and public interest determinations weigh in favor of granting the motion, Plaintiff's Motion for Preliminary Injunction is granted.

III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Plaintiff's Motion for Preliminary Injunction [Docket No. 11, filed April 9, 2014] is GRANTED.

IT IS FURTHER ORDERED that Defendants are enjoined from not delivering any legal mail from the ACLU to any inmate consistent with the above decision. If the inmate is no longer in custody, Defendants must return the mail forthwith to Plaintiff indicating same.

IT IS FURTHER ORDERED that, although Plaintiff has not addressed the security requirement set forth in Fed. R. Civ. P. 65(c), the Court will not require a security since the matter involves a constitutional issue affecting the public.

IT IS SO ORDERED.

Dated: May 15, 2014         S/Denise Page Hood
                            Denise Page Hood
                            United States District Judge

17

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 15, 2014, by electronic and/or ordinary mail.

                                        S/Julie Owens for LaShawn R. Saulsberry
                                        Case Manager